IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TAKEDA PHARMACEUTICAL COMPANY LTD., a Japanese Corporation, and TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., a Delaware Corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>TEVA PHARMACEUTICALS USA, INC., a Delaware Corporation, and TEVA PHARMACEUTICAL INDUSTRIES LTD., an Israeli Corporation,<br><br>    Defendants. | C.A. No. 09-841 (SLR) |
| TAKEDA PHARMACEUTICAL COMPANY LTD., a Japanese Corporation, and TAKEDA PHARMACEUTICALS NORTH AMERICA, INC., a Delaware Corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>WATSON LABORATORIES, INC. – FLORIDA, a Florida Corporation, WATSON PHARMA, INC., a Delaware Corporation and WATSON PHARMACEUTICALS, INC., a Nevada Corporation,<br><br>    Defendants. | C.A. No. 09-917 (SLR)<br><br>**REDACTED<br>PUBLIC VERSION** |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
TAKEDA'S PRE-2005 ESI AND IN OPPOSITION TO TAKEDA'S REQUEST FOR
PROTECTIVE ORDER RELATING TO THE SAME**

Of Counsel:

Mark D. Schuman
Matthew J. Goggin
Samuel T. Lockner
Marlee A. Jansen
Carlson, Caspers, Vandenburgh & Lindquist
225 South Sixth Street, Suite 3200
Minneapolis, Minnesota 55402
(612) 436-9600

Dated: June 3, 2010

Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Steven J. Fineman (#4025)
Fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Watson Laboratories, Inc. –
Florida, Watson Pharma, Inc. & Watson
Pharmaceuticals, Inc.*

RLF1 3578299v. 1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND ......................................................................................... 2
    A. The Parties ............................................................................................................. 2
    B. Takeda's Hatch-Waxman Complaint ..................................................................... 2
    C. Patent Issues And Events Before 2005 .................................................................. 3
    D. Takeda Opposes Electronic Discovery .................................................................. 4
III. ARGUMENT ................................................................................................................... 5
    A. Defendants Have Demonstrated Good Cause to
       Discover Takeda's ESI Dating Back To When It Started
       To Work On The Alleged Invention ...................................................................... 5
        1. Takeda's ESI Dating Back To When It Started To Work On
           The Alleged Invention Is Relevant To The Scope Of The Prior Art .................. 5
        2. Takeda's ESI Dating Back To When It Started To Work On
           The Alleged Invention Is Relevant To Defendants' Best Mode Defense .......... 6
        3. Takeda's ESI Dating Back To When It Started To Work On
           The Alleged Invention Is Relevant To The Inventors' Understanding
           Of The State Of The Art And Claim Construction .......................................... 7
        4. Takeda's ESI Dating Back To When It Started To Work On
           The Alleged Invention Is Relevant to Secondary Considerations ..................... 7
    B. Takeda Has Failed To Establish That Its ESI Dating Back To When
       It Started To Work On The Alleged Invention Is Not Reasonably Accessible
       And Thus Should Be Ordered To Produce Such ESI .............................................. 8
        1. Takeda's ESI Infrastructure Remains Unclear .................................................. 8
        2.                                                                      9
                                                       REDACTED
        3.
                                                                                                              10
CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Biacore v. Thermo Bioanalysis Corp.*,
  79 F. Supp. 2d 422 (D. Del. 1999) ........................................................................... 6

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) .................................................................................................. 5, 6

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................ 7

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
  2010 WL 141784 (D. Del. Mar. 30, 2010) ............................................................... 7

*UCB, Inc. v. KV Pharm. Co.*,
  2010 WL 809815 (D. Del. Mar. 9, 2010) ................................................................. 6

**STATUTES & RULES**

35 U.S.C. § 102(a) .......................................................................................................... 5

35 U.S.C. § 112 ........................................................................................................... 3, 6

Fed. R. Civ. P. 26 ............................................................................................................ 8

Fed. R. Civ. P. 26(b)(2)(B) ..................................................................................... 1, 2, 8

## I. INTRODUCTION

Takeda sued Defendants on a patent that it claims covers an alleged invention REDACTED . Defendants seek an order compelling Takeda to produce electronically stored information (ESI) dating back to 1992, when Defendants reasonably believe Takeda started the work that led to the patent, for which they claim a priority date of 1996. ESI from this period is critical to many issues in this patent case, including, among others, the date of conception and reduction to practice, potential concealment of the best mode of the claimed invention, obviousness and the inventors' understanding of the prior art, and construction of the claim language. For each of these issues, the law requires the Court to focus on events at the time of the alleged invention. Therefore, documents from this timeframe are highly relevant to this case.

These facts establish good cause to extend the presumptive 5-year period for e-discovery under this Court's form scheduling order to include the time periods that are relevant to the validity and interpretation of the patent-in-suit.

Despite the clear relevance of these earlier documents, Plaintiffs oppose any e-discovery created before 2005 because they allege these documents are not "reasonably accessible" under Fed. R. Civ. P. 26(b)(2)(B).

REDACTED

so that they could continue to use them – a standard business practice. Although it has had three opportunities to brief this issue, Takeda still has not clarified the form of all its pre-2005 ESI to justify its broad request.

1

Takeda should be ordered to produce ESI dating back to when it started the work that led to the patent-in-suit. At the very least, Takeda should be required to produce all ESI

REDACTED

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiffs (collectively "Takeda") include Takeda Pharmaceutical Company, Ltd. ("TPC"), a Japanese corporation; its U.S. marketing subsidiary, Takeda Pharmaceuticals North America, Inc. ("TPNA"); and Takeda Global Research & Development, Inc. ("TGRD").[2] Takeda is routinely involved in U.S. patent litigation. According to PACER, in the last ten years Takeda has been a party to 128 patent lawsuits in this country. Defendants include three Watson entities (collectively "Watson") and two Teva entities (collectively "Teva"). Watson and Teva are both generic pharmaceutical companies.

### B. Takeda's Hatch-Waxman Complaint

Takeda filed its complaint under the Hatch-Waxman Act alleging that Watson and Teva's proposed generic ramelteon products, if approved, would infringe U.S. Patent No. 6,034,239 (the "'239 patent"). In 2005, the Food and Drug Administration ("FDA") approved Takeda's New Drug Application ("NDA") for a ramelteon product to be sold under the name Rozerem. Takeda listed the '239 patent in the Orange Book for Rozerem. Because the Act provides an owner of an NDA covering a new chemical entity with a period of five years of exclusivity, Defendants could not even apply for FDA approval for their products until July 22, 2009. On or about that date, Teva and Watson each filed an Abbreviated New Drug Application ("ANDA"), seeking approval

---

[1] Defendants reserve their right to establish good cause under Federal Rule of Civil Procedure 26(b)(2)(B) after reviewing Takeda's document production.

[2] TGRD is the owner of Takeda's NDA. Although TGRD is not a named party to this lawsuit, Takeda has agreed to produce documents from TGRD. (D.I. 15 (C.A. No. 09-917).)

2

RLF1 3578299v. 1

of its generic product and including a certification that the claims of the '239 patent were invalid and not infringed. This lawsuit could not have been initiated any earlier.

### C. Patent Issues And Events Before 2005

Defendants assert that they do not infringe the '239 patent and that the patent is invalid as being obvious and for failure to comply with 35 U.S.C. § 112. The overwhelming majority of documents and events relating to these issues, *i.e.*, obviousness, best mode, and claim construction, date back to the allegedly inventive timeframe. The '239 patent issued over ten years ago from a patent application filed over thirteen years ago, and claims priority rights to the filing date of provisional and foreign applications filed as long ago as March 8, 1996. Although the actual date of the alleged invention is disputed,

REDACTED

Thus, ESI from this timeframe will undoubtedly include, among other things, project reports, emails, status reports, meeting minutes, and research data that will reveal how and when the alleged invention was conceived, how and when it was reduced to practice, what the best mode was to make or perform it, and the inventors' understanding of the state of the art at the time.

After it filed its patent application,

REDACTED

when it electronically filed its NDA seeking approval for Rozerem. At the conclusion of all this research, documentation, and testing, the FDA approved the NDA on July 22, 2005. ESI from this timeframe will include, among other things, research reports, studies, and data that reveal the clinical efficacy and pharmacological properties of Rozerem.

3

RLF1 3578299v. 1

Defendants have served written discovery on Takeda to obtain critical information to prove their affirmative defenses and counterclaims. Indeed, Takeda's interrogatory responses reveal the parties already dispute, *inter alia*,

**REDACTED**

### D. Takeda Opposes Electronic Discovery

Takeda opposes Defendants' request for electronic discovery dating back to the time when the alleged invention of the '239 patent was discovered.[3] The issue was previously briefed and argued telephonically in a hearing before the Court. Although Takeda's earlier briefs generally alleged that its ESI was not reasonably accessible, it provided no affidavits or specifics to support its claim. During the hearing, Takeda attempted to fill in the gaps by orally presenting facts that it said supported its argument. (D.I. 40, Tr. pp. 5:15-6:4.)

The Court concluded that the burden had been shifted to Takeda to prove that its pre-2005 ESI was not reasonably accessible and requested additional briefing. (D.I. 40, Tr. p. 18:9-11.) Takeda subsequently filed a brief and three declarations which provide incomplete details of its ESI infrastructure. For example, **REDACTED** to a new format so that its employees would not be deprived of years of institutional memory.

---

[3] Takeda's opposition to producing documents remains unclear.

**REDACTED**

4

RLF1 3578299v.1

## III. ARGUMENT

### A. Defendants Have Demonstrated Good Cause To Discover Takeda's ESI Dating Back To When It Started To Work On The Alleged Invention

Under the Court's form scheduling order, a party is presumptively entitled to electronic discovery for five years, but may extend the time period by showing good cause. Defendants have shown good cause to obtain ESI dating back to 1992, when Takeda likely started the work that led to the alleged invention. Most disputed patent issues in this case will be resolved, in part, by information that is locked in documents that are dated long before 2005. Four of these issues – obviousness, claim construction, best mode, and conception and reduction to practice – require the Court to decide what was happening at the time of the alleged invention. The Court will have to decide whether the patent was obvious *at the time of the alleged invention*, when the inventors first conceived the invention, whether the inventors were aware of an undisclosed best mode during patent prosecution, and what the claims meant to a person of ordinary skill in the art *at the time of the invention*.

REDACTED ESI generated during this period is highly relevant to at least Takeda's claims of unexpected properties and secondary considerations.

#### 1. Takeda's ESI Dating Back To When It Started To Work On The Alleged Invention Is Relevant To The Scope Of The Prior Art

The first step in deciding whether a patent is obvious is to determine the scope of the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Prior art includes patents, publications, and devices that are dated before the invention date of the patent-in-suit. 35 U.S.C. § 102(a). Thus, accurately determining the invention date is critical to an obviousness analysis because of its effect on the scope of the prior art. Where, as here, the patentee claims an

5

invention date earlier than its patent filing date, the actual invention date is the date the inventor conceived of the invention, provided he diligently reduced it to practice. The only way to determine the invention date is with reference to documents dated from the time of the invention that provide contemporaneous evidence of the inventor's thoughts and actions. **REDACTED** To perform step one of the *Graham* analysis, Defendants should be permitted to discover the facts surrounding Takeda's alleged invention, *i.e.*, learn what the inventors conceived, when and how they conceived it, and how they reduced it to practice. REDACTED

– when Takeda was admittedly generating ESI. Defendants might be prejudiced if they cannot discover this information because they bear the burden of proof on this issue. *See UCB, Inc. v. KV Pharm. Co.*, 2010 WL 809815 at *4 (D. Del. Mar. 9, 2010) ("In establishing a pre-filing date of invention . . . a party challenging the patent has the burden of proof") (citing *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996)).

### 2. Takeda's ESI Dating Back To When It Started To Work On The Alleged Invention Is Relevant To Defendants' Best Mode Defense

Defendants have pled affirmative defenses based on Takeda's failure to satisfy 35 U.S.C. § 112, which includes best mode.[5] (D.I. 8 (C.A. No. 09-917), p. 8; D.I. 7, p. 6.) "The Patent Act requires that a patent specification contain . . . a disclosure of the best mode [known by the inventor] of carrying out the invention." *Biacore v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 465-66 (D. Del. 1999). Takeda's ESI (*e.g.*, emails, project reports, etc.) showing what the

---

[4] "Ex.__" refers to exhibits attached to the Declaration of Steven J. Fineman filed herewith.
[5] Takeda claims Defendants are seeking to "fish for discovery" because Defendants did not allege best mode as a defense. (D.I. 42, p. 1.) Takeda's claim is mistaken. Both Defendants have asserted this defense. (D.I. 8 (C.A. No. 09-917), p. 8; D.I. 7, p. 6.)

inventors knew during prosecution is critical to support Defendants' best mode defense. Again,

REDACTED

### 3. Takeda's ESI Dating Back To When It Started To Work On The Alleged Invention Is Relevant To The Inventors' Understanding Of The State Of The Art And Claim Construction

The inventors' understanding of the state of the art is relevant to, among other things, claim construction. The first step in an infringement analysis is to construe the claims of the patent-in-suit. Claim terms are typically given the meaning they would have to a person of ordinary skill in the art at the time of the invention. In construing the claims, the Court may rely on inventor testimony. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *see also Robert Bosch, LLC v. Pylon Mfg. Corp.*, 2010 WL 1417874 at *14 (D. Del. Mar. 30, 2010). Takeda's documents (*e.g.*, project reports, summaries, etc.) from the timeframe surrounding the alleged inventive activities, including its ESI, will show the inventors' understanding as to the intended scope of the claims of the '239 patent.

### 4. Takeda's ESI Dating Back To When It Started To Work On The Alleged Invention Is Relevant to Secondary Considerations

Secondary considerations of non-obviousness are factors aside from the prior art that are relevant to whether the patent-in-suit would have been obvious at the time of the invention. These factors include such things as long-felt need, prior failure of others, unexpected results and commercial success of the invention. **REDACTED**

Indeed, the Patent Office only allowed the patent to reissue after an inventor attested to the surprising and unexpected properties of Rozerem. (Ex. B.)

REDACTED

is relevant to its claim of unexpected properties. Takeda's ESI from this timeframe

7

RLF1 3578299v. 1

(*e.g.*, emails, project reports, data summaries, clinical reports, etc.) will bear directly on the merit of any claim of an unexpected property.

Moreover, Takeda's ESI from around the timeframe of the allegedly inventive activities will provide state-of-the art and contextual information that bear on other alleged secondary considerations, including failure of others and long-felt need.

**B.    Takeda Has Failed To Establish That Its ESI Dating Back To When It Started To Work On The Alleged Invention Is Not Reasonably Accessible And Thus Should Be Ordered To Produce Such ESI**

Takeda requests that the Court limit its discovery obligations for ESI to 2005 through the present pursuant to Federal Rule of Civil Procedure 26(b)(2)(B). Under this Rule, Takeda must establish that its pre-2005 ESI is not reasonably accessible due to undue cost or burden; Takeda has failed to meet its burden. Its supporting declarations are conclusory and do not disclose with clarity the type of ESI Takeda possesses, where it is located, and why none of it can be accessed. Moreover, any burden or cost incurred by Takeda in producing pre-2005 ESI from backup tapes is attributable to its own conduct and therefore should not be deemed undue. And importantly, Defendants' motion is not limited to     REDACTED     Takeda should be ordered to produce any relevant pre-2005 ESI maintained on media     REDACTED

**1.    Takeda's ESI Infrastructure Remains Unclear**

Takeda must show that its pre-2005 ESI is not reasonably accessible in sufficient detail to permit Defendants to evaluate their claim. *See* Fed. R. Civ. P. 26 (Advisory Committee Notes (2006)). Takeda's supporting declarations are rife with gaps relating to its pre-2005 ESI and do not satisfy Takeda's burden. Most glaring, Takeda does not even address the accessibility of TGRD's pre-2005 ESI, despite agreeing that it would produce TGRD's documents. (D.I. 15 (C.A. No. 09-917).) Takeda has failed to meet its burden as to TGRD.

8

RLF1 3578299v.1

As to TPC and TPNA, Takeda suggests that its **REDACTED** But it is silent as to whether it maintains ESI **REDACTED** etc. Although Takeda breaks down TPC's and TPNA's pre-2005 ESI **REDACTED** While Takeda claims that ; it does not specify the software, or say whether were converted to the new software, as many businesses do. Nor does Takeda explain why. Takeda provides no information about TPNA's email software.

**REDACTED**

There are too many gaps and unknowns to conclude Takeda has met its burden as to TPC and TPNA, and it clearly did not do so as to TGRD.

2. **REDACTED**

Takeda's REDACTED reasonably accessible for purposes of discovery. Takeda is a sophisticated multinational company that placed its **REDACTED** so that it can access such information at a later date, if necessary.

To the extent Takeda incurs any costs or burdens associated with producing such ESI, Takeda alone created these problems. Takeda routinely engages in patent disputes[6] and is well aware that Hatch-Waxman cases oftentimes by statute cannot be initiated for several years after

---

[6] PACER shows that Takeda has been involved in at least 128 patent cases since June of 2001.

the alleged invention. For example, due to Rozerem's new chemical entity exclusivity, Defendants could not challenge the '239 patent until *4 years after* the approval of the NDA, which was *12 years after* Takeda filed its patent application. Yet, Takeda

REDACTED

As Takeda's expert Daniel L. Regard II and colleagues stated,

> Organizations that use backup tapes for archival purposes should be aware that this practice is likely to cause substantially higher costs for evidence preservation and production in connection with litigation. Organizations seeking to preserve data for business purposes or litigation should, if possible, employ means other than disaster recovery backup tapes.

(Ex. C, p. 23.) Takeda implemented its system; it understood its discovery obligations; and it sued Defendants. Takeda is the exclusive cause of any burden or cost.

3.  REDACTED

Despite submitting three declarations, Takeda has not explicitly stated to the Court that all its pre-2005 ESI is maintained exclusively on REDACTED. Takeda has not argued that any pre-2005 ESI located or stored on electronic media REDACTED s is inaccessible due to burden or cost. Therefore, Takeda should be ordered to produce any pre-2005 ESI stored on any electronic media REDACTED

IV. **CONCLUSION**

Based on the foregoing arguments, Defendants respectfully request that the Court order Takeda to produce ESI dating back to when it started the work that led to the '239 patent (approximately 1992) or, at the very least, all its ESI that is stored on media REDACTED REDACTED dating back to same timeframe.

10

Of Counsel:

Mark D. Schuman
Matthew J. Goggin
Samuel T. Lockner
Marlee A. Jansen
Carlson, Caspers, Vandenburgh & Lindquist
225 South Sixth Street, Suite 3200
Minneapolis, Minnesota 55402
(612) 436-9600

Dated: June 3, 2010

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com
Steven J. Fineman (#4025)
Fineman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Watson Laboratories, Inc. –
Florida, Watson Pharma, Inc. & Watson
Pharmaceuticals, Inc.*

11

RLF1 3578299v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and which has also been served as noted:

### VIA E-MAIL

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801


John C. Phillips, Jr., Esquire
Brian E. Farnan, Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

### VIA E-MAIL

Bruce Wexler, Esquire
Joseph O'Malley, Jr., Esquire
Preston K. Ratliff, Esquire
Gary Ji, Esquire
Charles Minkoff, Esquire
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

Edward H. Rice, Esquire
Steven Lubezny, Esquire
Loeb & Loeb LLP
321 North Clark Street
Suite 2300
Chicago, IL 60654


/s/ Steven J. Fineman
Steven J. Fineman (#4025)
fineman@rlf.com

RLF1 3578532v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and which has also been served as noted:

**VIA E-MAIL**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

**VIA E-MAIL**

Bruce Wexler, Esquire
Joseph O'Malley, Jr., Esquire
Preston K. Ratliff, Esquire
Gary Ji, Esquire
Charles Minkoff, Esquire
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY 10022

John C. Phillips, Jr., Esquire
Brian E. Farnan, Esquire
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806

Edward H. Rice, Esquire
Steven Lubezny, Esquire
Loeb & Loeb LLP
321 North Clark Street
Suite 2300
Chicago, IL 60654

/s/Laura D. Hatcher
Laura D. Hatcher (#5098)
hatcher@rlf.com